**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Bryan Dixon

   v.                                           Civil No. 14-cv-397-LM
                                          Opinion No. 2015 DNH 190
City of Somersworth, and
Police Officer Michael
McCarthy


**O R D E R**


Bryan Dixon brought three claims against the city of
Somersworth and two Somersworth police officers, Michael
McCarthy and Edward Correia, seeking to recover for injuries he
sustained when McCarthy and Correia took him into custody.
Before the court is defendants' motion for summary judgment.
Dixon objects.  After Dixon filed his objection, the parties
"stipulate[d] that all claims in [this] action except Count I
with regard to the use of [a] taser shall be dismissed with
prejudice."  Stip. (doc. no. 12) 1.  Accordingly, this case now
consists of a single claim against a single defendant: a Fourth
Amendment excessive-force claim against Officer McCarthy,
brought pursuant to 42 U.S.C. § 1983, based upon Officer
McCarthy's use of a taser on Dixon.  For the reasons that
follow, defendants' motion for summary judgment is granted.

## I. Summary Judgment Standard

A movant is entitled to summary judgment where he "shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).

## II. Background

The following facts, drawn from Officer McCarthy's affidavit, are undisputed. Plaintiff acknowledges the lack of any factual dispute, noting in his memorandum of law that he does not recall the incident on which his claim is based.

At the time of the incident, McCarthy was a patrolman with the Somersworth Police Department ("SPD"). On October 20, 2011, an SPD dispatcher notified Officer McCarthy of a report that a male subject had broken into a parked car. After responding to the location of the break-in, Officer McCarthy briefly saw the suspect, whom he has since identified as Dixon, fleeing from the scene. Officer McCarthy was then informed that Dixon had been seen on a bicycle heading toward the General Electric plant located along the Salmon Falls River in Somersworth. Officer McCarthy pursued the suspect to that location in his car.

2

When he arrived at the General Electric plant, Officer
McCarthy was told that Dixon had climbed under a fence and was
running along the Salmon Falls River. Officer McCarthy began
driving to the river along the plant's access road.  While
driving, Officer McCarthy spotted Dixon running near the river
and saw him climb under a second fence.  Dixon changed direction
and continued to run parallel to the river.  Officer McCarthy
shouted at Dixon to stop.  Dixon ignored Officer McCarthy's
orders and continued running.

Officer McCarthy then pulled his cruiser closer to Dixon,
who again changed direction and headed toward the river.
Officer McCarthy exited his cruiser, and as Dixon ran by,
Officer McCarthy again ordered him to stop.  Dixon did not stop.

Instead, Dixon climbed over a chain-link fence and jumped
off of a ledge and across an open gap onto a metal staircase
attached to the side of a pump building.  At the bottom of the
staircase was a landing that overlooked a 50-foot drop to the
fast-flowing river and its rocky bed.  The only barrier between
the landing and the river below was a chain-link fence of about
the same height as the fence that Dixon had already climbed
over.

Dixon began running down the staircase toward the landing.
Officer McCarthy then shouted: "Stop or I will tase you."  Dixon

ignored Officer McCarthy's command.  At that point, an eight-
foot fence secured with a padlock separated Officer McCarthy
from Dixon and the staircase.  He decided that climbing the
fence would be dangerous, and that he needed to use his taser to
prevent Dixon from climbing over the fence in front of him and
jumping into the river.  Officer McCarthy's concern that Dixon
would jump into the river was based upon Dixon's repeated
failures to obey commands and Officer McCarthy's perception that
Dixon was acting as if he was under the influence of unknown
substances.

Officer McCarthy turned on his taser, aimed at the middle
of Dixon's back, and shouted at least two more times: "Stop or I
will tase you."  Dixon did not stop.  After waiting until Dixon
had nearly reached the bottom of the staircase, Officer McCarthy
fired his taser.  When he fired, Dixon was within five feet of
the taser's maximum effective range.  Although Officer McCarthy
aimed for Dixon's back, the taser's probes struck him in the
head and arm.

Dixon brought this action, alleging claims that Officer
McCarthy used excessive force against him in violation of the
Fourth and Fourteenth Amendments to the United States
Constitution.

**III. Discussion**

McCarthy argues that he is entitled to summary judgment on grounds of qualified immunity and because his actions were consistent with the Fourth Amendment.  Dixon objects, contending that the reasonableness of Officer McCarthy's actions is a question of fact that should not be taken from the jury at this stage of the litigation.  Officer McCarthy's qualified immunity argument is persuasive and dispositive.

Generally speaking, 42 U.S.C. § 1983 "provides a civil remedy for state action that deprives persons of federal statutory or constitutional rights."  Rivera-Corraliza v. Puig-Morales, 794 F.3d 208, 213 (1st Cir. 2015) (citing Klunder v. Brown Univ., 778 F.3d 24, 30 (1st Cir. 2015)).  The Fourth Amendment, in turn, bars police officers from using a "level of force [that is] objectively unreasonable under the circumstances."  Fernandez-Salicrup v. Figueroa-Sancha, 790 F.3d 312, 326 (1st Cir. 2015) (citing Asociación de Periodistas de P.R. v. Mueller, 529 F.3d 52, 59 (1st Cir. 2008)).  More specifically:

> To determine whether an officer's actions were
> objectively reasonable, [a court] must balance "the
> nature and quality of the intrusion on the
> individual's Fourth Amendment interests against the
> countervailing governmental interests at stake."
> [Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014)]
> (internal quotation marks and citation omitted).  In
> so doing, [a court] analyze[s] the totality of the

circumstances, taking the "perspective of a reasonable
officer on the scene, rather than . . . the 20/20
vision of hindsight."  Id. (internal quotation marks
omitted).

Mitchell v. Miller, 790 F.3d 73, 77 (1st Cir. 2015).

As noted, McCarthy argues that he is entitled to qualified

immunity from Dixon's Fourth Amendment claim.  "Qualified

immunity is a doctrine that shields government officials

performing discretionary functions from liability for civil

damages 'insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a

reasonable person would have known.'"  Fernandez-Salicrup, 790

F.3d at 325 (quoting Estate of Bennett v. Wainwright, 548 F.3d

155, 167 (1st Cir. 2008); citing Harlow v. Fitzgerald, 457 U.S.

800, 818 (1982)).  The doctrine is intended to give "government

officials breathing room to make reasonable but mistaken

judgments by protecting all but the plainly incompetent or those

who knowingly violate the law."  Mitchell, 790 F.3d at 77

(quoting City & Cty. of S.F., Cal. v. Sheehan, 135 S. Ct. 1765,

1774 (2015)).

To determine whether defendants in § 1983 actions are

entitled to qualified immunity, courts employ a two-pronged

analysis.  See Fernandez-Salicrup, 790 F.3d at 325 (citing Glik

v. Cunniffe, 655 F.3d 78, 81 (1st Cir. 2011).  Under the first

prong, a court must "decide 'whether the facts alleged or shown

6

by the plaintiff make out a violation of a constitutional right.'" Id. (quoting Glik, 655 F.3d at 81; citing Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)). Under the second prong, a court "determine1s whether the right was clearly established at the time of the defendant's alleged violation." Id. (citation and internal quotation marks omitted). Determining whether a right was clearly established, in turn, involves a two-part inquiry into:

> (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he [or she] was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his [or her] conduct violated the right.

Id. (quoting Mlodzinski v. Lewis, 648 F.3d 24, 32–33 (1st Cir. 2011)). Finally, a court considering a qualified immunity defense may begin – and end – its analysis with the second prong rather than having to start with the first. See Rivera-Corraliza, 794 F.3d at 215, 223 (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009); see also Mitchell, 790 F.3d at 77-78.

The court begins with the second prong. When a defendant invokes qualified immunity, "[t]he plaintiff bears the burden of demonstrating that the law [the defendant purportedly violated] was clearly established at the time of the alleged violation." Mitchell, 790 F.3d at 77; see also Rivera-Corraliza, 794 F.3d at

215 (citing Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992)).  To meet this burden, the plaintiff must:

> [I]dentify controlling authority or a robust consensus of persuasive authority such that any reasonable official in the defendant's position would have known that the challenged conduct is illegal in the particular circumstances that he or she faced — then-existing precedent, in other words, must have placed the statutory or constitutional question . . . beyond debate.

Rivera-Corraliza, 794 F.3d at 214-15 (quoting Plumhoff, 134 S. Ct. at 2023; citing Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083, 2084 (2011); Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 9, 10 (1st Cir. 2013)) (internal quotation marks omitted).

Here, plaintiff does not even attempt to carry his burden of identifying legal authority that would have placed Officer McCarthy on notice that his actions would violate Dixon's Fourth Amendment rights.  In fact, plaintiff's memorandum of law does not include a single legal citation.  Rather, plaintiff's argument amounts to the following paragraphs:

> A reasonable jury may decide that Defendant McCarthy's deployment of the taser had nothing to do with preventing a suicide.  The jury may determine that in the heat of pursuit of the plaintiff, Defendant McCarthy acted unreasonably and ignored his training in the use of the taser and unreasonably deployed the taser at someone running down a flight of stairs.
>
> . . . [A] jury may find that Defendant McCarthy's firing of the taser while plaintiff was running down the stairs was unreasonable.  Therefore, it is inappropriate at this stage of the proceeding for this Court to take that decision from a jury.

Pl.'s Mem. of Law (doc. no. 11) 3-4 (citation to the record omitted). Notwithstanding Dixon's reference to suicide prevention, Officer McCarthy never said he was concerned that Dixon might attempt suicide. Rather, he said in his affidavit and his police report that he was concerned, based upon Dixon's actions up to that point – climbing over or under three different fences and jumping across an open gap to the stairway – that Dixon might attempt to continue eluding capture by jumping over another fence and into the river.

More importantly, plaintiff's attempt to stave off summary judgment fails to account for the fact that under the circumstances of this case, qualified immunity is a legal hurdle that he must clear before his case can even get to a jury. See Mlodzinski, 648 F.3d at 28 (noting that "whether a particular constitutional right existed" is a legal question); Raiche v. Pietroski, 623 F.3d 30, 35 (1st Cir. 2010) (citing Iacobucci v. Boulter, 193 F.3d 14, 22 (1st Cir. 1999)). Moreover, it is well established that qualified immunity, when properly invoked, "is an immunity from suit rather than a mere defense to liability." Penn v. Escorsio, 764 F.3d 102, 109 (1st Cir. 2014) (quoting Plumhoff, 134 S. Ct. at 2019).

Thus, the law is clear that Dixon bears the burden of identifying legal authority that would have put Officer McCarthy

on notice of the unconstitutionality of his actions, and the court of appeals for this circuit has characterized that burden as a heavy one. See Mitchell, 790 F.3d at 77 (citing McGrath v. Tavares, 757 F.3d 20, 29 (1st Cir. 2014)). Dixon has not carried his burden. And, despite a diligent search, the court has been unable to locate any legal authority that would have put Officer McCarthy on notice that his use of a taser, under the circumstances of this case, violated the Fourth Amendment's proscription of unreasonable force.

The opinion of the court of appeals in Mitchell offers useful guidance on the state of the law regarding the use of force against fleeing suspects on the date of the events giving rise to Dixon's claims. In Mitchell, the alleged Fourth Amendment violation took place in April of 2011, approximately six months before Officer McCarthy's encounter with Dixon. The plaintiff in Mitchell claimed that a police officer violated the Fourth Amendment by shooting him with a gun as he was fleeing, by car, from an attempt to take him into custody. See 790 F.3d at 75-76. After pointing out that Mitchell had "the burden of demonstrating that as of April 10, 2011, the time of the alleged violation, the law was clearly established that a reasonable officer in Miller's shoes would be on notice that his actions

would violate the Fourth Amendment," id. at 78, the court of

appeals continued:

> To determine the state of the law as of that date, we
> first turn to the Supreme Court's opinion in Brosseau
> v. Haugen, 543 U.S. 194 (2004).
>
> The conduct at issue in Brosseau occurred in
> February 1999.  Id. at 200 n.4.  Police Officer
> Brosseau responded to a fight in progress and chased
> one of the participants (Haugen) on foot.  Id. at 196.
> When Haugen jumped into a parked Jeep and locked the
> doors, refusing to exit the vehicle, Officer Brosseau
> struck the Jeep's window several times with her
> handgun before shattering it.  Id.  She then reached
> into the car and attempted to wrest the keys from
> Haugen.  Id.  Haugen prevailed in the struggle,
> managing to start the Jeep and throw it into gear,
> driving in the direction of an occupied vehicle and
> forcing Brosseau to jump back.  Id.  Brosseau fired
> one shot as the Jeep drove off, hitting Haugen in the
> back.  Id. at 196–97.  Haugen filed a § 1983 action
> alleging that Brosseau used excessive force.  Id. at
> 194–95.  Officer Brosseau argued that she fired her
> gun in reasonable fear for the safety of other
> officers in the area, passengers in the occupied
> vehicle, and "any other citizens who might be in the
> area."  Id. at 197.  The district court granted
> summary judgment to Brosseau on the grounds of
> qualified immunity, and the Ninth Circuit reversed.
> Id. at 195.  The Supreme Court "express[ed] no view as
> to the correctness of the Court of Appeals' decision
> on the constitutional question," but held that the
> right was not clearly established, and Brosseau was
> entitled to qualified immunity.  Id. at 198.  As the
> Supreme Court has since instructed, "Brosseau makes
> plain that as of February 21, 1999 — the date of the
> events at issue in that case — it was not clearly
> established that it was unconstitutional to shoot a
> fleeing driver to protect those whom his flight might
> endanger."  Plumhoff, 134 S. Ct. at 2023.

Mitchell, 790 F.3d at 78 (parallel citations omitted).  While

Brosseau is not directly on point, the requisite analysis does

not require perfect congruence.  See id.  And, given the result in Brosseau, this court concludes that as of October 2011, it was not clearly established that it was unconstitutional to shoot a seemingly impaired suspect fleeing on foot with a taser to prevent that suspect from engaging in further flight that appeared to pose a high risk of serious injury.

In sum, because Dixon has not carried his burden of identifying any legal authority that would have put Officer McCarthy on notice that using a taser on him violated the Fourth Amendment, McCarthy is entitled to the protection of qualified immunity and to judgment as a matter of law on the only claim that remains in this case.

## IV. Conclusion

For the reasons described above, defendants' motion for summary judgment, document no. 10, is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 5, 2015
cc:  Charles P. Bauer, Esq.
     Caroline Leonard, Esq.
     Lawrence A. Vogelman, Esq.